UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTINE DUTTWEILLER,

                Plaintiff,                              5:05-CV-0886
v.                                                              (GTS/GHL)

EAGLE JANITORIAL, INC.; and
EAGLE BUILDING SERVICES, INC.,

                Defendants,
_____

APPEARANCES:                                               OF COUNSEL:

CARROLL LAW FIRM                               WOODRUFF CARROLL, ESQ.
  Counsel for Plaintiff
Galleries of Syracuse, 2nd Floor
441 South Salina Street
Syracuse, NY 13202-0352

KIRWIN LAW FIRM, PC                         TERRY J. KIRWIN, JR., ESQ.
  Counsel for the Eagle Defendants
7075 Manlius Center Road
East Syracuse, NY 13057

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

      Currently before the Court in this labor and disability discrimination action filed by Christine Duttweiller ("Plaintiff") is a motion for summary judgment filed by Eagle Janitorial, Inc. and Eagle Building Services, Inc. ("the Eagle Defendants"). (Dkt. No. 107.) For the reasons set forth below, the Eagle Defendants' motion is granted.

I.      RELEVANT BACKGROUND

   A.      Plaintiff's Amended Complaint

In her Amended Complaint, Plaintiff asserts, *inter alia*, the following claims against the Eagle Defendants and Local 200 United Service Employees International Union ("the Union Defendant") arising out of incidents leading up to and including Plaintiff's termination from her employment with the Eagle Defendants: (1) two claims under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 141 *et seq*. ("LMRA") for breach of the duty of fair representation and breach of the parties' Collective Bargaining Agreement ("CBA"); (2) a claim under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq*. ("ADA") for disability discrimination; and (3) a claim under the New York State Human Rights Law ("NYSHRL") for disability discrimination.  (Dkt. No. 60.)

   B.      Court's Decision and Order of June 4, 2009

On June 4, 2009, the Court issued a Decision and Order in this action, dismissing Plaintiff's claims against the Union Defendant.  *Duttweiller v. Eagle Janitorial, Inc*., 05-CV-0886, 2009 WL 1606351 (N.D.N.Y. June 4, 2009) (Suddaby, J.).  In that Decision and Order, the Court declined to address Plaintiff's claims with regard to the Eagle Defendants because the Eagle Defendants had failed to file separate motion papers after their request to join the Union Defendant's motion papers was denied; instead, the Court granted the Eagle Defendants leave to file a motion for summary judgment.  *Duttweiller*, 2009 WL 1606351, at *1, 22.  Because this Decision and Order is issued primarily for review by the parties in this action, and because the factual issues raised by the pending motion are identical to the factual issues addressed by the Court in its Decision and Order of June 4, 2009, the Court will not recite the

action's relevant factual history or undisputed material facts, but will simply refer the reader to the Court's Decision and Order of June 4, 2009. *Id.* at *1-11.

###    C.    Eagle Defendants' Motion for Summary Judgment

Generally, in support of their motion for summary judgment, the Eagle Defendants argue as follows: (1) Plaintiff's claim under the LMRA must be dismissed because she has failed to establish that the Union breached its duty of fair representation; (2) her claim under the ADA must be dismissed because she has failed to establish that (a) she is disabled within the meaning of the ADA, and (b) she suffered an adverse employment action as a result of her disability; and (3) her claim under the NYSHRL must be dismissed for the same reasons that her ADA claim must be dismissed.  (*See* Dkt. No. 107, Part 7 [Defs.' Memo. of Law].)

In response to the Eagle Defendants' motion for summary judgment, Plaintiff argues, *inter alia*, as follows: (1) the Eagle Defendants were required, under the Union contract and the ADA, to wait for a diagnosis before discharging Plaintiff; and (2) Plaintiff has introduced evidence sufficient to make out a prima facie case under the ADA, and the Eagle Defendants have failed to establish a non-discriminatory reason for terminating her.  (*See* Dkt. No. 110, Part 6 [Plf.'s Response Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

###    A.    Legal Standard Governing Motions for Summary Judgment

Because the parties have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will refer the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which recites that legal standard.

3

    **C.    Legal Standards Governing Plaintiff's Claims**

Because the Court has already (in its Decision and Order of June 4, 2009) recited the legal standards governing Plaintiff's claims, the Court will not recite those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. Instead, the Court will refer the reader to the Court's Decision and Order of June 4, 2009. *Duttweiler*, 2009 WL 1606351, at *21-40.

**III.    ANALYSIS**

    **A.    Plaintiff's Claims Under the LMRA**

Based on the current record, the Court agrees with the Eagle Defendants that Plaintiff's LMRA claim must be dismissed because she has failed to establish that the Union breached its duty of fair representation.

"To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the [Union] contract but must also carry the burden of demonstrating a breach of duty by the Union." *Duttweiler*, 2009 WL 1606351, at *11 (citations omitted). "Stated another way, to be successful against either the Employer or the Union, an employee-plaintiff must establish breach of the Union's duty of fair representation." *Id*. (citations omitted).

In her response papers, Plaintiff has adduced no admissible record evidence that is materially different from the record evidence she adduced in response to the previous motion for summary judgment before the Court. (*Compare* Dkt. No. 94 [containing 10-page affidavit of Plaintiff's counsel, 35-page affidavit of Plaintiff, 1-page supplemental affidavit of Plaintiff, 3-page denial of claim by Social Security Administration, 22-page Union Agreement, 292 pages of transcripts of depositions of four of Defendants' employees, and 141 pages of Plaintiff's medical

records] *with* Dkt. Nos. 110, 113 [containing 10-page affidavit of Plaintiff's counsel, 12-page affidavit of Plaintiff, 3-page denial of claim by Social Security Administration, two copies of excerpts from the 22-page Union Agreement, 292 pages of transcripts of depositions of four of Defendants' employees, 145 pages of Plaintiff's medical records, 2-page affidavit of Dr. Brian P. Rieger, PhD, 1-page affidavit of John Butz, Jr., and a copy of the Court's Decision and Order of 6/4/09].)

As an initial matter, Plaintiff's counsel's affidavit does not constitute admissible record evidence for purposes of the Eagle Defendants' for summary judgment. *See, e.g.*, N.D.N.Y. L.R. 7.1(a)(3) ("The record [on a summary judgment motion] . . . does not . . . include attorney's affidavits."). This is because Plaintiff's counsel is not competent to provide testimony in this action, in that he does not have personal knowledge of the events providing for the basis of this action. Affidavits submitted on a summary judgment motion must be based on personal knowledge. *Duttweiller*, 2009 WL 1606351, at *3 [collecting authorities]. Indeed, if Plaintiff's counsel did have such personal knowledge, he would likely have to withdraw as counsel.[1]

---

[1] *See* N.Y. Rule of Professional Conduct 3.4(d)(2),(3) ("A lawyer shall not . . . in appearing before a tribunal on behalf of a client . . . assert personal knowledge of fact in issue except when testifying as a witness . . . [or] assert a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused . . . ."); N.Y. Rule of Professional Conduct 3.7(a) ("A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.").

In addition, Plaintiff's counsel's "affidavit" contains legal argument in violation of Local Rule 7.1(a)(2) of the Local Rules of Practice for this Court.[2] This defect is disconcerting since, before counsel filed his response to the Eagle Defendants' motion, the Court had advised him of a similar defect in a prior affidavit by Plaintiff (which was obviously drafted by counsel), indicating that the current defect was willful.[3] Finally, when construed together with his Memorandum of Law, Plaintiff has submitted more than twenty-five pages of legal argument in her response, in violation of Local Rule 7.1(a)(1). For these reasons, the Court strikes Plaintiff's counsel's affidavit.[4]

Plaintiff's new affidavit does not materially differ from her prior affidavit. (*Compare* Dkt. No. 110 at 14-25 *with* Dkt. No. 94, Parts 1, 7.) The Court acknowledges that the new affidavit attempts to correct defects in the prior affidavit, by deleting the paragraphs of the prior affidavit that (1) contained legal argument, (2) were obviously drafted by her attorney and not her (e.g., in the third person point of view), (3) were clearly not made on Plaintiff's personal knowledge, and/or (4) attempted to contradict, in part or in whole, sworn testimony previously

---

[2]   N.D.N.Y. L.R. 7.1(a)(2) ("An affidavit must not contain legal arguments . . . .").

[3]   *Duttweiler*, 2009 WL 1606351, at *3 ("Plaintiff is reminded that . . . [an] affidavit must be made on personal knowledge, . . . and show that the affiant is competent to testify on the matters stated.").

[4]   A district court may, in its discretion, strike "inappropriate portions of a summary judgment affidavit." *Epstein v. Kemper Ins. Co.*, 210 F. Supp.2d 308, 313 (S.D.N.Y. 2002) (citation omitted). The Court notes that Plaintiff's response memorandum of law violates the Local Rules of Practice for this Court because (1) it does not contain a table of contents, (2) its pages are not numbered, (3) it is not double spaced, and (4) if it were double spaced it would exceed twenty-five (25) pages, especially when construed together with Plaintiff's counsel's affidavit, which improperly contains legal argument (*see* Dkt. No. 110, at 1-10). N.D.N.Y. L.R. 7.1(a)(1), 7.1(a)(2), 10.1(a). However, out of special solicitude to Plaintiff, and because the Court is already striking the affidavit of her counsel, the Court will not strike her memorandum of law.

given by Plaintiff during her deposition.  (*Id*.)  However, in its prior Decision and Order, the Court did not rely on those improper paragraphs but struck them.  *Duttweiller*, 2009 WL 1606351, at *2-4.  As a result, the absence of those paragraphs in Plaintiff's new affidavit is immaterial, under the circumstances.[5]

John Butz's affidavit contains no new factual assertions material to the issue of whether the Union Defendant breached its duty of fair representation.  (Dkt. No. 113.)   For example, Mr. Butz asserts that (1) at some point in time, he "was [through some unidentified means] made aware of" Plaintiff's "slow processing speed," and (2) despite this "fault," she was "overall an excellent employee."  (*Id*. at ¶ 5.)  As an initial matter, nothing in the affidavit justifies imputing this knowledge to the Union Defendant during the time in question.  In any event, even if it were

---

[5]      The Court notes that Plaintiff's affidavit is not properly notarized.  For example, the "notarization" of the affidavit lacks the following: (1) a legible statement of the notary public's name; (2) the words "Notary Public, State of New York"; (3) the county in which the notary public is qualified (i.e., where the county clerk holds his or her original certificate and signature card); and (4) the place of notarization.  (*See* Dkt. No. 110 at 25.)  *See* N.Y. Exec. Law § 137 ("In exercising his powers pursuant to this article, a notary public, in addition to the venue of his act and his signature, shall print, typewrite, or stamp beneath his signature in black ink, his name, the words 'Notary Public State of New York,' the name of the county in which he originally qualified, and the date upon which his commission expires and, in addition, wherever required, a notary public shall also include the name of any county in which his certificate of official character is filed, using the words 'Certificate filed . . . . . . County.'").  In addition, Plaintiff's affidavit fails to substantially comply with the certification requirements of 28 U.S.C. § 1746 in that it is not sworn to under the penalty of perjury.  *See Tackman v. Goord*, 99-CV-0438, 2005 WL 2347111, at *26-27 (W.D.N.Y. Sept. 26, 2005) ("A document's qualification as an affidavit is not determined by the presence or absence of the stamp or seal of a notary.  Rather, the statement may properly be considered in opposition to summary judgment provided the proffered statement conforms to the requirements of 28 U.S.C. § 1746.  A writing that does not contain the exact language of 28 U.S.C. § 1746 will not be disregarded provided it substantially complies with these statutory requirements, which is all that this Section 1746 requires. . . . [However, an affidavit] may not be considered in opposition to Defendants' summary judgment motion . . . [if the affiant] has not subjected himself to the penalties for perjury should it ultimately be determined that the statements contained therein are false.")  However, out of special solicitude to Plaintiff, the Court will overlook the defects in the notarization of her affidavit.

so imputed, such knowledge would not establish either of the two elements that Plaintiff must establish in order to prevail on a fair-representation claim: (1) that the Union Defendant's conduct was arbitrary, discriminatory, or in bad faith; and (2) that the Union Defendant's acts or omissions seriously undermined the arbitral process. *Duttweiller*, 2009 WL 1606351, at *12-13. More specifically, Mr. Butz's affidavit in no way alters the Court's reasoning in Part III.A.1. of its Decision and Order of June 4, 2009. *Id*. at *13-16.[6]

For similar reasons, the Court reaches the same conclusion with regard to the affidavit of Dr. Brian P. Reiger. (Dkt. No. 110, at 12-13.) For example, nothing in Dr. Reiger's affidavit establishes any of the following facts: (1) that the Union Defendant "failed" to inform the Eagle Defendants of Plaintiff's efforts to obtain a "neuropsyche" evaluation; (2) that any such "failure" was what caused Plaintiff to be terminated; (3) that the Union Defendant handled Plaintiff's grievances with any discriminatory intent; (4) that the Union Defendant's decision not to arbitrate Plaintiff's termination was arbitrary; (5) that the Union Defendant in any way "failed" to prevent Plaintiff from suffering harassment; or (6) that the Union Defendant in any way "failed" to request reasonable accommodations for Plaintiff. As a result, Dr. Reiger's affidavit in no way alters the Court's reasoning in Part III.A.1. of its Decision and Order of June 4, 2009. *Duttweiller*, 2009 WL 1606351, at *13-16.

For these reasons, the Court dismisses Plaintiff's LMRA claim against the Eagle Defendants.

---

[6] The Court notes that, like Plaintiff's affidavit, John Butz's affidavit is not properly notarized or certified pursuant to 28 U.S.C. § 1746. (Dkt. No. 113.) However, again, out of special solicitude to Plaintiff, the Court will overlook the defects in the notarization of John Butz's affidavit.

B.     **Plaintiff's Claims Under the ADA and NYSHRL**[7]

Based on the current record, the Court agrees with the Eagle Defendants that Plaintiff's ADA and NYSHRL claims must be dismissed because she has failed to establish that (1) she is disabled within the meaning of the ADA and NYSHRL, and (2) she suffered an adverse employment action as a result of her disability.

In the Court's Decision and Order of June 4, 2009, the Court concluded that, based on the record then-before the Court, Plaintiff could not succeed on the merits of her ADA claim:

> Plaintiff is unable to satisfy her initial burden of demonstrating a prima facie case of discrimination because she has not provided sufficient evidence that she is disabled within the meaning of the ADA. In addition, Plaintiff failed to provide sufficient evidence that she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation. Finally, Plaintiff is unable to make out a prima facie case because she has not provided sufficient evidence that she suffered an adverse employment action because of her disability.

*Duttweiller*, 2009 WL 1606351, at *21. As stated above in Part III.A. of this Decision and Order, in her response papers, Plaintiff has adduced no admissible record evidence that is materially different from the record evidence she adduced in response to the previous motion for summary judgment before the Court. For example, the affidavit submitted by Dr. Reiger does not establish that either (1) Plaintiff was "disabled" within the meaning of the ADA when she was terminated in January 2005, or (2) the Eagle Defendants regarded her as disabled when they terminated her in January 2005. This is because Dr. Reiger did not begin treating Plaintiff until February 2006–more than one year *after* Plaintiff was terminated. (Dkt. No. 110, Part 1, at 12-13.) As a result, Dr. Reiger's affidavit in no way alters the Court's reasoning in Part III.B. of its

---

[7]    The Court analyzes these claims together because "[c]ourts in the Second Circuit apply the same analysis to claims under [the NYSHRL] and Title VII." *Duttweiller*, 2009 WL 1606351, at *21 (quoting *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp.2d 513, 528 [S.D.N.Y. 2008]).

Decision and Order of June 4, 2009. *Duttweiller*, 2009 WL 1606351, at *17-21.

In the alternative, the Court dismisses Plaintiff's ADA and NYSHRL claims against the Eagle Defendants because (1) the Eagle Defendants have offered a non-discriminatory reason for terminating Plaintiff (i.e., the fact that, after having failed to follow written instructions on at least one occasion, and verbal instructions on more than one occasion, Plaintiff intentionally messed up a work area), and (2) Plaintiff has failed to offer any evidence that this non-discriminatory reason was simply a pretext for discrimination. Instead, Plaintiff simply argues that it was wrong for the Eagle Defendants to fire her before the results from her neurological testing were issued. The main problem with this argument is that Plaintiff has adduced no admissible record evidence that her alleged disability caused her termination (or even that it caused her to commit the conduct that led to her termination).[8]

For these reasons, the Court dismisses Plaintiff's ADA and NYSHRL claims against the Eagle Defendants.

**ACCORDINGLY,** it is

**ORDERED** that the Eagle Defendants' motion for summary judgment (Dkt. No. 107) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 60) is **DISMISSED** in its entirety. The clerk is directed to enter judgment and close this case.

Dated: December 22, 2009
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[8] Plaintiff was ultimately terminated for "intentionally messing up an area that her Employer is contracted to clean." *Duttweiller*, 2009 WL 1606351, at *9.